FILED
7/6/15 8:20 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| LARRY E. CHARLES and SHIRLEY M. CHARLES, | : : | Case No. 14-10718-TPA |
| *Debtors* | : : | Chapter 12 |
| CROSSROADS BANK, *Plaintiff* | : : : | Adv. No. 14-1084-TPA |
| | : | Related to Doc. No. 19 |
| v. | : : | |
| LARRY E. CHARLES and SHIRLEY M. CHARLES, *Defendants* | : : : | |

*Appearances*:  Crystal Thornton-Illar, Esq., for the Plaintiff
                Brian C. Thompson, Esq., for the Defendants

## MEMORANDUM OPINION

Plaintiff Crossroads Bank ("the Bank") filed this adversary proceeding against the Debtors seeking a determination that a debt owed to it by the Debtors is not dischargeable in bankruptcy based on *11 U.S.C. §523(a)(2)(B)* (false statement in writing) and an order in the Debtor's prior bankruptcy approving a settlement that provided the debt would be non-dischargeable. The Bank has now filed a ***Motion for Summary Judgment*** ("Motion") at Doc. No. 19, to which the Debtors have responded. Both sides have submitted briefs and have agreed to forego any oral argument. For the reasons set forth below, the *Motion* will be granted.[1]

---

[1] The case is a core matter under *28 U.S.C. §157(b)(2)(I)* and the Court has jurisdiction over the matter pursuant to *28 U.S.C. §1334*. Neither Party has ever raised an issue regarding jurisdiction or core status.

1

# FACTS

The Debtors, Larry and Shirley Charles, are family farmers, as is their son, David Charles ("David").  In May 2009, David sought financing from the Bank to purchase two grain bins and related accessories.  On May 11, 2009, the Bank and David entered into an Indiana Commercial Lease Agreement ("Lease"), with the Bank as lessor and David as lessee, pursuant to which David was to make an initial payment of $5,900, followed by 10 further semi-annual payments of $6,735.80.  Pursuant to a Residual Purchase Agreement executed the same date, at the end of the 5½ year term of the Lease, David was to purchase the grain bins outright from the Bank for 10% of the original cost to the Bank.

Debtor Larry Charles signed the Lease that same date in a block near the end marked "Personal Guaranty" which stated that he "unconditionally guaranteed to [Bank] the full and prompt performance by the Lessee."  Debtor Shirley Charles signed a separate document that same date entitled Individual Guaranty representing that she was "unconditionally" guaranteeing to pay the Bank any installments due under the Lease.[2]  (The two documents are referred to hereinafter as the "Guaranties").  There is a sharp disagreement among the parties as to how the Debtors came to sign the Guaranties.

The Bank claims that David did not have sufficient creditworthiness on his own to obtain the Lease, and therefore the Debtors submitted a credit application to the Bank and agreed

---

[2]   It is not clear from the record why the two Debtors signed separate documents like this rather than the same one, but that is not relevant for purposes of the *Motion*.

to act as guarantors so that David could obtain the financing. The Bank says it relied on the Debtors' credit application and would not have agreed to enter the Lease with David without the Debtors acting as guarantors. The Debtors argue that they did not know David was unable to secure the financing on his own and were misled by the Bank into simply believing that they were involved in the transaction only because the grain bins that were the subject of the financing were to be placed on real property owned by them. For reasons to be discussed further below, this factual dispute is irrelevant for purposes of the *Motion*.

The Bank contends that David defaulted on the Lease on or about May 1, 2010, though that is disputed by the Debtors who claim to lack knowledge of any default. In any event, it is a matter of public record and undisputed that David and his wife Stacy Charles filed a Chapter 12 bankruptcy petition on June 25, 2010, in this Court at Case No. 10-11172-TPA ("David's 2010 Case"). A plan was confirmed in David's 2010 Case on December 8, 2011, but the case was ultimately dismissed on March 17, 2014, based on a motion for voluntary dismissal filed by the debtors in which they stated they were unable to continue making plan payments.

On August 9, 2010, the Debtors themselves also filed a case under Chapter 12 at Case No. 10-11432 ("the 2010 Case"). The Bank filed proof of claim 16-1 in the 2010 case on November 29, 2010, setting forth a claim of $67,202.97 based on the Guaranties. The Bank also filed an adversary proceeding against the Debtors in the 2010 Case at Adv. No. 11-1027-TPA ("the 2010 Case Adversary") on February 14, 2011. The complaint in the 2010 Case Adversary alleged that David had defaulted on the Lease and the Bank had been in the process of pursuing its rights against the Debtors under the Guaranties when the 2010 Case was filed. It further alleged that the Debtors'

obligation to the Bank under the Guaranties should be found non-dischargeable pursuant to *11 U.S.C. §523(a)(2)(B)* because of false statements they had made to the Bank in the credit application they submitted in connection with the Lease.

The Debtors filed a motion to dismiss the 2010 Case Adversary, arguing that the complaint should be dismissed because it did not include a copy of the credit application submitted by them that supposedly contained false statements, and because they did not receive any direct benefit as a result of any alleged false statements they had made. The Bank filed a response opposing the motion to dismiss. At a hearing on the motion to dismiss held on April 8, 2011, the parties announced that they had reached a tentative agreement to resolve the matter and were in the process of reviewing a draft settlement agreement. As a result of that information the Court directed the parties to file a stipulation of settlement by May 9, 2011, or the complaint would be dismissed.

On May 9, 2011, the parties filed a *Joint Motion and Stipulation to Entry of Order Approving Settlement Agreement* ("Joint Settlement Motion"), see 2010 Case Adversary Doc. No. 14. In the *Joint Settlement Motion* the Debtors and the Bank acknowledged that as of the date the 2010 Case was filed the Debtors were liable to the Bank in the amount of $67,202.97 under the Guaranties. *Id.* at ¶4. The *Joint Settlement Motion* also noted that the Debtors "disputed that they knew or understood that they were signing personal guaranties when executing the Guaranties, and admit no liability whatsoever to Bank other than as expressly set forth herein." *Id.* at ¶7. The Settlement Agreement which the parties asked the Court to approve included the following components:

4

- The Debtors' debt to the Bank would be reduced to $30,000

- The Bank would forebear any collection efforts against the Debtors for the duration of the of the plan in David's 2010 Case.

- Once the outstanding debt owed by David to the Bank was reduced to $30,000 in David's 2010 Case, every further reduction thereafter would reduce the Debtor's liability to the Bank dollar for dollar.

- The Bank's right to collect anything from the Debtors would cease and expire on the complete satisfaction of the obligations to the Bank under the plan in David's 2010 Case.

- The Debtors agreed their debt to the Bank would be deemed non-dischargeable in the 2010 Case, any conversion thereof to Chapter 7, and any future bankruptcy case filed by either of the Debtors and they expressly waived the dischargeability of the debt under any applicable section of the Bankruptcy Code, including *11 U.S.C. §523(a)(10)*.

- Upon a default by David, to include a dismissal of David's 2010 Case, and his failure to cure within 15 days of written notice of default, the Debtors debt to the Bank would become immediately due and payable.

The Court approved the *Joint Settlement Motion*, and therefore the Settlement Agreement, in a May 10, 2011 Order, *see* Doc. No. 15 in the 2010 Case Adversary. The 2010 Case Adversary was then closed on May 25, 2011. The 2010 Case itself was ultimately closed on April 28, 2014, based on a motion for voluntary dismissal filed by the Debtors.

On April 4, 2014, David and Stacy Charles filed another Chapter 12 bankruptcy case at Case No. 14-10413-TPA ("David's 2014 Case"). The Bank filed proof of claim 27-1 in the case in the total amount of $53,233.97, of which $44,250 was claimed as secured. On December 4, 2014,

5

the Debtors in David's 2014 Case initiated Adv. No. 14-1088-TPA against the Bank, seeking to have the Bank's secured claim valued at $10,000, which was alleged to be the value of the two grain bins. The Bank filed an answer and the Court scheduled the mater for an evidentiary hearing but before that occurred or any decision was made the debtors moved to dismiss the adversary for the reason that they "no longer wishes to pursue this matter," without further elaborating. That motion to dismiss was granted and the adversary was closed on May 12, 2015. David's 2014 Case itself remains ongoing. A plan was confirmed on February 9, 2015, that provides for the Bank to be paid $10,000 in annual payments amortized over ten (10) years at 4% interest, resulting in an annual payment of $1,250 (with the final five payments to be made directly by the debtors after completion of the plan).

The Debtors filed the within Chapter 12 bankruptcy case ("the 2014 Case") on June 20, 2014. The Bank initiated the within adversary proceeding on December 1, 2014 and filed proof of claim 15-1 on December 31, 2014, in the amount of $30,000 on the basis of the May 10, 2011 Order in the 2010 Case Adversary approving the *Joint Settlement Motion*.

The Parties agree that the two grain bins that are the collateral for the Lease are still in the possession of David and have not been taken by the Bank. If and when the collateral is liquidated by the Bank, the Bank agrees that the Debtors will be entitled to the appropriate credit.

## SUMMARY JUDGMENT STANDARD

*Fed.R.Bankr.P. 7056* incorporates *Fed.R.Civ.P. 56* into bankruptcy adversary proceedings. *Fed.R.Civ.P. 56(a)* provides that the Court shall grant summary judgment to the

6

moving party "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Bank, as the moving party, therefore has the burden to prove the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material for summary judgment purposes if, under applicable substantive law, it may affect the outcome of the case. *Id.* at 325. If the movant shows the absence of genuine issues of material fact, the nonmoving party must "set forth specific facts showing there is a genuine issue for trial." *Id.* at 322, n. 3. Throughout the analysis, the Court must view the facts in the light most favorable to the non-moving party, here the Debtors, and draw all inferences in their favor. *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 276 (3d Cir. 2001).

## DISCUSSION

The language of the Settlement Agreement between the Debtors and the Bank clearly provides that the compromised amount of the debt that the Debtors would owe to the Bank – $30,000, less any credit that might be applicable due to certain payments made by or on behalf of David – would be non-dischargeable in the 2010 Case or in any other subsequent bankruptcy case that the Debtors might file. The Debtors were represented by counsel and presumably made an informed decision to enter into the Settlement Agreement rather than proceed with the 2010 Case Adversary and run the risk that the entire debt the Bank was claiming at the time, over $67,000, would be found non-dischargeable, and that the Bank would immediately pursue them for payment. *See, e.g., Joint Settlement Motion* at ¶10 (acknowledgment that each side has had an opportunity to review the Settlement Agreement with its attorney).

Despite the seemingly clear language of the Settlement Agreement to the effect that the debt is not dischargeable, the Debtors now contend that summary judgment should not be granted for a number of reasons. The Court has reviewed the arguments advanced by the Debtors and finds that none have any merit, for the reasons explained below.

First, the Debtors argue that they were misled by the Bank with respect to their signing of the Guaranties, claiming that they thought they were only being required to sign something because they owned the real estate on which the grain bins were to be placed. The problem for the Debtors is that this allegation of having been misled was something known by them when the Settlement Agreement was reached, and in fact was something set forth in the recitals to the Settlement Agreement, which were incorporated in full and made part of the Agreement:

> WHEREAS, the Debtors dispute that they knew or understood that they were signing personal guaranties when executing the Guaranties, and admit no liability whatsoever to Bank other than as specifically set forth herein.

Settlement Agreement at Recital No. 3, *see Motion*, Exhibit E.

In other words, although the Debtors believed that they had been misled as to the nature of the Guaranties, they nevertheless agreed to voluntarily forego pursuing any claim related thereto and instead entered into the Settlement Agreement with the Bank, which they then asked the Court to approve, and which the Court did approve. The Debtors gave up any claim that they had been misled. *See*, Paragraph 8 of the Settlement Agreement in which the Debtors agreed to

release and waive any claims they might have against the Bank or its agents. This was obviously part of the *quid pro quo* that went into the overall settlement, with the Debtors in return obtaining such benefits as a reduced claim amount, a forbearance from the Bank's pursuit of the claim for at least a time, and the possibility of a further reduction in the claim if the Bank were to make a recovery in David's 2010 Case. If the Court were to now allow the Debtors to use allegations of having been misled by the Bank as a defense to the *Motion*, not only would that be contrary to the Settlement Agreement, it would also be patently unfair.[3]

What the Debtors are really trying to do here is to attack the Settlement Agreement itself and the May 10, 2011 Order that approved it. That, however, is an improper collateral attack. If the Debtors believe the May 10, 2011 Order was improper for some reason and should be changed or vacated, they are required to attack it directly, for example under *Fed.R.Bankr.P. 9024*, something they have failed to do.

The Debtors next argue that they only entered into the Settlement Agreement because David had promised that he would pay the Bank's claim. There are numerous flaws in that argument. The Settlement Agreement does not say anything about the Debtors' obligations thereunder somehow being conditional on David carrying out a promise that he would pay. In fact,

---

[3] The use of analogies to illustrate a point can be hazardous, but the Court will take the risk here. Consider a circumstance where A sues B for negligently inflicting an injury, seeking $100,000 in damages. B files an answer raising as a defense that A is barred from any recovery because of his own contributory/comparative negligence. Subsequently, A agrees to settle the claim and dismiss the suit in return for B's promise to pay him $50,000. If A later pursues B for payment on the $50,000 settlement, no court would allow B to raise contributory/comparative negligence as a defense because that has already been factored into the parties' settlement and waived.

9

quite to the contrary the Settlement Agreement specifically contemplated the possibility that David would default in making payments to the Bank and it made the occurrence of such default an event that would trigger the obligation of the Debtors to pay. *See*, Settlement Agreement at Paragraph 6. The Settlement Agreement also contains an integration clause (Paragraph 14) and a clause requiring that any amendments to it be in a writing signed by all parties (Paragraph 17). The Debtors' attempt to vary the terms of the Settlement Agreement by in effect making it conditional on the actions of David is contrary to the terms of the Settlement Agreement, and is likely in violation of the parol evidence rule as well. *See, e.g., In re the Baptist Home of Philadelphia*, 525 B.R. 236, 242 (Bankr. E.D. Pa. 2014).

The third argument raised by the Debtors is that the Settlement Agreement violates a public policy of the Bankruptcy Code that debtors can never waive a potential future right of discharge that they may have in a future bankruptcy filing. The Debtors, however, have cited to no specific provision in the Bankruptcy Code, or to case law, wherein this public policy principle is expressly stated, nor can the Court itself find such principle. At most, it might be said that there is a policy against a debtor agreeing to waive the dischargeability of a debt outside of the setting of a bankruptcy proceeding. But that is not what happened here; the Settlement Agreement was entered into to resolve a nondischargeability dispute within a bankruptcy case, and that makes all the difference.

While there is not an extensive body of case law on the precise point, the cases that do exist support this conclusion. For instance, in *In re Saler*, 205 B.R. 737 (Bankr. E.D. Pa. 1997) *aff'd* 217 B.R. 166 (E.D. Pa. 1998), cited by the Bank, the court concluded that a debtor may consent

to settle bankruptcy nondischargeability litigation by agreeing that the debt is not dischargeable, and such agreement will be enforced in a subsequent bankruptcy case as well, just the same as if the court in the first bankruptcy case had made a determination of non-dischargeability. 205 B.R. at 748-49 (citing cases).

The Debtors try half-heartedly to distinguish *Saler* on the grounds that the debt at issue in that case involved criminal conduct, whereas there is no hint of any criminal wrongdoing in the present case, but a review of *Saler* makes clear that any criminal basis for the debt played no role in the court's decision. In any event, to avoid that distraction, the Court can point to *Lichtenstein v. Barbanel*, 161 Fed. Appx. 461 (6th Cir. 2005).

The debtor in *Lichtenstein* filed a 1991 Chapter 7 bankruptcy case and his ex-wife filed a proof of claim, objected to his exemptions, sought discovery of his assets, and moved for additional time to file a complaint objecting to discharge. The debtor and his ex-wife then entered into a "Stipulation of Nondischargeability" agreement, which was approved by the bankruptcy court, whereby he agreed to stipulate to the non-dischargeability of any claims she had related to the dissolution of their marriage in exchange for her withdrawing all pending motions and objections she had filed in the case and her agreement not to participate further in the bankruptcy case. The debtor received a discharge in due course and subsequently the state court presiding over the parties' divorce entered an order requiring the debtor to make various payments to his ex-wife. The debtor then filed a second bankruptcy case in 2004 and simultaneously filed an adversary proceeding seeking a determination that his debt to his ex-wife from the divorce court order was

11

dischargeable. The ex-wife filed a motion to dismiss the adversary on the basis that the "Stipulation of Nondischargeability" that had been approved by the court in the 1991 bankruptcy was a valid waiver of discharge, and thus the debt was excepted from discharge under *11 U.S.C. §523(a)(10).*[4]

The bankruptcy court in *Lichtenstein* agreed with the ex-wife, finding that the "Stipulation of Nondischargeability" was a waiver of discharge in a prior bankruptcy case, and therefore under *Section 523(a)(10)* was *res judicata* in the subsequent bankruptcy. The district court affirmed that conclusion, as did the 6th Circuit, finding that the debtor had made a valid and enforceable waiver that precluded his relitigation of the dischargeability of the same debt in his subsequent bankruptcy. *See also, e.g., In re Laing*, 31 F.3d 1050 (10th Cir. 1994) (stipulated agreement by debtor in prior bankruptcy that debt was non-dischargeable, including a waiver of discharge in any future bankruptcy, was binding in subsequent case); *In re Siebert*, 302 B.R. 265 (Bankr. N.D. Ohio 2003) (consent judgment entered in debtor's prior bankruptcy holding that certain debt was not dischargeable entitled to *res judicata* effect to preclude discharge of same debt in subsequent bankruptcy); *In re Klasinski*, 215 B.R. 181 (Bankr. C.D. Ill. 1997) (debtor's settlement of nondischargeability action by creditor in prior bankruptcy barred redetermination of that issue as to same debt in subsequent bankruptcy; even though prior settlement order did not explicitly say

---

[4]     *11 U.S.C. §523(a)(10)* provides in relevant part:

a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
...
(10) that was or could have been listed or scheduled by the debtor in a prior case concerning the debtor under this title or under the Bankruptcy Act in which the debtor waived discharge....

debt was nondischargeable that was obviously the parties' intent); *In re Mapother*, 53 B.R. 433 (Bankr. W.D. Ky. 1985) (approving a "Stipulation of Nondischargeability" waiving discharge as to a single debt); *In re Martinelli*, 96 B.R. 1011, (9th Cir. BAP 1988) (bankruptcy court did not err in refusing to set aside a stipulated judgment of nondischargeability that had resolved an adversary complaint alleging that debt was not dischargeable). The Court thus finds no basis for the Debtors' argument that the waiver of discharge as set forth in the Settlement Agreement is somehow contrary to public policy.[5]

The final argument raised by the Debtors is that the *Motion* should not be granted because the amount of debt owed to the Bank is uncertain since the Debtors may be entitled to credits for payments on the debt made in David's 2010 Case or David's 2014 Case, and by any amount received by the Bank if the collateral is liquidated. The Court agrees with the Debtors that the amount of the debt is not necessarily fixed at $30,000 because payments received by the Bank in David's 2010 Case may have reduced that amount, as provided by language in the Settlement Agreement. *See, id.* at Paragraph 5. Indeed, even in the absence of such language, the principle of not allowing a double recovery might well come into play to prevent the Bank from receiving a windfall.

---

[5] If anything, the Bank's position in the present case is even stronger than those of the creditors in *Saler* and *Lichtenstein*. The Settlement Agreement itself specifically provides that the agreement of non-dischargeability applies in future bankruptcy cases, so the Bank does not even need to rely on *res judicata* or *Section 523(a)(10)* to make its argument.

13

It is understandable that the Debtors could have some concerns in this regard. The proposed order that the Bank submitted along with the *Motion* includes as one of its provisions that "the Debtors' obligations arising from guaranties are non-dischargeable in the amount of $30,000." That is clearly not correct because $30,000 is the maximum amount of non-dischargeable debt that the Debtors may owe to the Bank, but it could be less. The Bank itself seems to now concede that point, indicating that by the *Motion* it is only seeking to have the debt found to be non-dischargeable, not to have the amount of the debt specifically determined.[6] The Court will enter an order accordingly, with the expectation that the Parties will either agree between themselves as to the proper amount of the debt or file an appropriate further proceeding if they cannot do so and need the Court to so decide.

The Court will close with the observation that not only is the result reached here in accordance with what the law provides, it also makes eminent sense from a practical standpoint. The Debtors having previously agreed to waive the dischargeability of their debt to the Bank in the

---

[6] An e-mail message from the Bank's attorney sent in response to an inquiry from the Court's staff about the Parties' understanding as to what was at issue in the *Motion* stated:

> The collateral is still in possession of the Debtors. The collateral is expected to be released to the Bank and will need to be liquidated. Of course, the Debtors will receive credit for the collateral after liquidation.
>
> With that in mind, what is in dispute in the instant proceeding is whether the debt itself is non-dischargeable, not what amount can be collected from the Debtor following satisfaction on any other collateral.

*June 9, 2015 e-mail to the Court's law clerk and Debtors' attorney from the Bank's attorney.*

face of allegations that they had submitted false information in their credit application, and having thereby gained concessions such as a reduction in the amount of the debt and the avoidance of a trial on the merits, should not now be given a second bite at the apple. To hold otherwise would invite chaos and open the door to the potential for litigation gamesmanship and abuse. In a case holding that a finding of non-dischargeability in an earlier bankruptcy based on dishonest dealing with creditors was binding in a second bankruptcy case, the court stated:

> The general principle is that other types of exception to discharge, especially under § 523(a)(2), (4) or (6), do involve "dishonest dealing with the creditors," which circumstances do not change in a second bankruptcy case. When the dishonest circumstances and nondischargeable character of such a debt have been judicially determined once, they need not be determined again. Indeed, such matters should not be litigated again; for such relitigation would promote repetitive bankruptcies, harass creditors, waste judicial resources, and misuse procedural mechanisms so as to obstruct, rather than facilitate, disposition of disputes on their merits. In Collier's words, "[t]here is ... sound reason why a debtor should be forever barred from having such debt[s] discharged."

*In re Szafranski*, 147 B.R. 976, 988 (Bankr. N.D. Okl. 1992).[7] This Court agrees completely with that view and will not permit the Debtors to walk away from their previous agreement so long as the May 10, 2011 Order remains in effect.

---

[7] In so holding, the *Szafranski* court distinguished other exceptions to discharge that do not involve a debtor's dishonest dealing with creditors, for example under *11 U.S.C. 523(a)(1)*. Depending on changed circumstances, such as the passage of additional time, such debt can potentially be discharged in a second bankruptcy even after having being held non-dischargeable in a first bankruptcy. The Bankruptcy Code itself recognizes this distinction. *See*, *11 U.S.C. §523(b)*. The present case does not involve that other type of exception to discharge.

## **CONCLUSION**

For all of the foregoing reasons, the Court finds that there are no material factual issues in dispute and that the Bank is entitled to the relief it seeks. The *Motion* will be granted. An appropriate order follows.

Dated: July 2, 2015

Thomas P. Agresti, Judge
United States Bankruptcy Court

Case administrator to serve:
    Crystal Thornton-Illar, Esq.
    Brian Thompson, Esq.
    Debtors